1  JEREMY D. WARREN
   California State Bar Number 177900
2  105 West F Street, Fourth Floor
   San Diego, California 92101
3  Tel: (619) 234-4433
   Email: jw@jwarrenlaw.com
4

5  Attorney for Mr. Lemus

6

7                      UNITED STATES DISTRICT COURT

8                     SOUTHERN DISTRICT OF CALIFORNIA

9  UNITED STATES OF AMERICA,        )    Case No. 07cr3238-WQH
                                     )
10          Plaintiff,               )
                                     )
11  v.                               )    MOTION TO SUPPRESS EVIDENCE
                                     )    BASED ON AN ILLEGAL SEARCH OF
12  JUAN HERNAN LEMUS,               )    MR. LEMUS'S RESIDENCE
                                     )
13          Defendant.               )
                                     )
14  _____ )          I.

15                            **Introduction**

16          Defendant Juan Hernan Lemus is charged with being a felon in possession of a firearm, 18

17  U.S.C. § 922(g).  He moves the Court to suppress evidence seized by the government based on an

18  unlawful, warrantless search of his residence.  This motion is based on the United States

19  Constitution, federal case law, and Rule 12 of the Federal Rules of Criminal Procedure.

20                                      II.

21                **Statement of Facts Relevant to the Motion**

22          Juan Lemus is a United States Citizen and lifetime resident of Calexico, California.

23  According to the reports provided by the government, the following occurred:

24          On the morning of August 24, 2006, officers of the Calexico Police Department learned

25  that Mr. Lemus had an outstanding felony warrant in Imperial County, California, on charges of

26  possession for sale of controlled substances.  *See* Statement of Probable Cause, attached.  The

27  charges were based on allegations that Mr. Lemus had thrown two baggies of methamphetamine

28  and one baggy of marijuana out his window more than a year earlier before a probation search of

                                        1

1 his residence.[1]

2     Intending to arrest Mr. Lemus that morning, two Calexico police officers conducted

3 surveillance at Mr. Lemus's  apartment.  The officers surreptitiously surveilled and, at

4 approximately 9:45 a.m., Mr. Lemus walked from his mother's residence next door and went into

5 his apartment.  The officers called for backup.  As two backup officers arrived, Mr. Lemus came

6 out of his residence and was standing in a fenced-in side yard/dog run area.

7     The officers approached Mr. Lemus and informed him they had an arrest warrant.  They

8 told him to come out of the yard.  Mr. Lemus challenged the officers, asking them why he was

9 being arrested.  He backed up towards his open glass sliding door, but the officers entered his yard

10 and, according to the search warrant application, "we immediately apprehended Lemus without

11 incident."

12     At this point, despite having arrested him outside his home, the officers entered into his

13 apartment, ostensibly to perform a protective sweep: "and [sic] which point, we cleared the

14 apartment for officer safety reasons."   As they left the apartment, one of the officers "noticed the

15 butt and grip portion of a semi-automatic handgun, hidden under the seat cushion of the couch

16 located in the living room area."  Alerting the other officers of a "possible firearm," the officers

17 lifted up the cushion to examine the item and determined that it was a Ruger pistol.  Aware that

18 Mr. Lemus had sustained a felony conviction, the officers then secured the scene and applied for a

19 search warrant for evidence of felon in possession of a firearm (California Penal Code § 12022)

20 through the Superior Court of Imperial County.  That afternoon, pursuant to the warrant, the

21 officers seized the pistol, which was loaded.  No evidence of any other crime was discovered.  Mr.

22 Lemus was not charged at that time; it was not until more than one year later, in November 2007,

23 that the federal government secured the indictment in the instant case.

24 //

25 //

26 //

27 _____

28     [1] It appears Mr. Lemus received a three year probationary sentence in 2002 for felony
accessory, California Penal Code § 32.  The 2006 drug charges are still pending in Imperial County.

1
2
3

**II.**

**The Arresting Officers Violated the Fourth Amendment by Conducting a Protective Sweep of Mr. Lemus's Home.**

4    On August 24, 2007, four Calexico police officers arrested Mr. Lemus outside his home

5    "without incident" on a warrant for charges stemming from an allegation that over a year earlier

6    he had thrown three baggies of narcotics out his window before a probation search.  Without a

7    search warrant, the officers immediately entered his home.

8    It is "axiomatic that the physical entry of the home is the chief evil against which the

9    wording of the Fourth Amendment is directed."  *Welsh v. Wisconsin,* 466 U.S. 740, 748 (1984).

10   Warrantless entries are "presumptively unreasonable."  *Payton v. New York,* 445 U.S. 573, 586

11   (1980).  Only a few specially established exceptions that were "zealously and carefully drawn"

12   may justify the admission of evidence obtained from a warrantless search.  *Jones v. United States*,

13   357 U.S. 493, 499 (1958).

14   In this case, the only potential exception that may excuse compliance with the warrant

15   requirement is the protective sweep.  This narrowly drawn exception, as the Court of Appeals for

16   the Ninth Circuit recently explained, "is to protect law enforcement officers from attacks by

17   dangerous confederates" of the defendant.  *United States v. Murphy*, 2008 Lexis 3505 (9th Cir.

18   February 20, 2008); *Maryland v. Buie*, 494 U.S. 325, 333-334  (1990) ("*Buie*").  As a threshold

19   matter, the rule would appear to apply only in cases where the defendant is arrested *in* the house.

20   As the Court stated in Buie, officers making an arrest have an interest in "taking steps to assure

21   themselves that the house in which a suspect is being, or has just been, arrested is not harboring

22   other persons who are dangerous and who could unexpectedly launch an attack."  *Buie,* 494 U.S.

23   at 333 (explaining that "an in-home arrest puts the officer at the disadvantage of being on his

24   adversary's 'turf.'  An ambush in a confined setting of unknown configuration is more to be feared

25   than it is in open, more familiar surroundings").  In Mr. Lemus's case, by contrast, Mr. Lemus

26   was arrested outside his home; the concerns outlined in *Buie* do not apply and the protective

27   sweep doctrine should not justify the invasion.

28

1    Even where officers arrest an individual within the home, they may conduct a sweep of the

2  rest of the residence only if supported by "specific and articulable facts supporting the belief that

3  other dangerous persons may be in the building or elsewhere on the premises." *Murphy*, supra at

4  *4 (internal citation omitted).  In *Buie*, the Supreme Court specifically applied this *Terry*[2] standard

5  for evaluation of whether fear of dangerous confederates justified dispensing with the warrant

6  requirement.

7    In this case, the officers can make no such showing of reasonable suspicion of other

8  dangerous individuals within Mr. Lemus's residence.  The officers surveilled the area for two to

9  three hours before effecting the arrest; there is no indication they saw him with anyone else that

10  morning, other than leaving his mother's home and walking by himself back to his apartment.

11  They had been to his apartment before and knew it was a small studio apartment and that Mr.

12  Lemus lived there by himself.  The warrant was based on non-violent drug related offenses, and

13  the officers were not confronted with other individuals before or during Mr. Lemus's arrest.

14    Absent specific articulations of reasons to fear dangerous individuals within the home, the

15  officers had no legal right to enter Mr. Lemus's home that morning.  The Court should suppress

16  all fruits of the illegal warrantless entry and search.  *Wong Sun v. United States*, 371 U.S. 471

17  (1963).

18                                    **III.**

19  **Even if A Protective Sweep Was Constitutional, the Search of the Couch was Unlawful as it**

20              **Exceeded the Scope of the Protective Sweep Doctrine**

21    In this case, the officers assert that the gun was discovered only at the conclusion of the

22  protective sweep as they were leaving the residence.  At this point, one of the officers asserted

23  that he discovered the butt of the gun "hidden" under the couch; he summonsed other officers to

24  examine the "possible firearm."  *See* Statement of Probable Cause. The officers then lifted the

25

26        [2]

27   *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (permitting pat-down frisks for weapons only where
    "specific and articulable facts which, taken together with the rational inferences from those facts,
28  reasonably warranted" the officer in believing an individual posed a physical danger to the
    officer).

1  cushion to examine the suspect item.  Since protective sweeps are limited only to areas where a

2  dangerous individual may be hiding, the officer had no legitimate reason to search under the

3  couch cushions.  Thus, the weapon was discovered in a search conducted beyond the scope of the

4  protective sweep doctrine.  *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987).   Under these

5  circumstances, the Court must suppress the fruits of the unlawful search.

6  **IV.**

7  **The Warrant Was Not Based on An Independent Source that Alleviated the Taint of the**

8  **Illegal Search.**

9  The general rule is that evidence "obtained as a direct result of an unconstitutional search

10  or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804 (1984).  In

11  this case, it is true that the officers did not remove the firearm immediately but waited to secure a

12  search warrant from a California judicial officer before seizing it.  However, the application for

13  the warrant was based exclusively on the unlawful search of Mr. Lemus's home.

14  Thus, there was no independent source of the evidence establishing probable cause for

15  issuance of the search warrant.   While "evidence is not to be excluded if the connection between

16  the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to

17  dissipate the taint," *id.*, here the basis for the warrant was the direct fruit of the unlawful entry and

18  search.  The warrant does not render the illegal search valid, and the evidence must be suppressed.

19  **V.**

20  **Conclusion**

21  As stated above, the Court should determine that the law enforcement officers violated the

22  Fourth Amendment in conducting the entry into and search of Mr. Lemus's residence.  Because

23  the subsequent warrant was based on facts and evidence gained only through a violation of the

24  Fourth Amendment, the warrant was a product of the illegal search.  The gun, the ammunition,

25  and all other evidence seized from Mr. Lemus's house on August 24, 2006 should be suppressed.

26  Respectfully submitted,

27  /s Jeremy D. Warren

28  Dated: March 10, 2008          JEREMY D. WARREN
                                  Attorney for Defendant Lemus

**PROOF OF SERVICE**

1

2

3    I declare that:

4    I am a citizen of the United States and employed in the city of San Diego, CA. I am

5 over eighteen years of age. My business address is 105 West F Street, Fourth Floor San Diego,

6 CA 92101.

7    On March 10, 2008, I personally served the following documents:

8    **Motion for to Suppress Evidence as a Result of an Illegal Search of Mr.**

9    **Lemus's Residence**

10    on the below attorneys by electronic filing:

11    Assistant United States Attorney Randy Jones

12    I declare under penalty of perjury that the foregoing is true and correct, and that this

13 declaration was executed on March 10, 2008 at San Diego, CA.

14

15    /s Jeremy Warren

16    _____

17    Jeremy D. Warren

18

19

20

21

22

23

24

25

26

27

28