1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,                    CASE NO. 07cr3238WQH

12 |                              Plaintiff,        ORDER

vs.

13 | JUAN HERNAN LEMUS,

14 |                             Defendant.

15 HAYES, Judge:

16       The matter before the Court is the Motion to Suppress Evidence (Doc. # 17) filed by

17 Defendant Juan Hernan Lemus.

18                                  **FACTS**

19       On August 24, 2006, at approximately 6:00 a.m., Detective Eric Longoria of the

20 Calexico Police Department Investigations Division arrived at work and was informed during

21 a briefing that an arrest warrant had been issued for Defendant for possession of controlled

22 substances for sale. Detective Longoria testified that he knew Defendant had past arrests and

23 incidents in Calexico, including a conviction for accessory to attempted murder from a drive-

24 by shooting. Detective Longoria testified that he had several contacts with Defendant and his

25 family members, including cousins who Detective Longoria knew were involved in violent

26 crimes such as robbery and were on probation for those crimes. Detective Longoria testified

27 that he had taken part in a probation search of Defendant's residence on May 25, 2005, and

28 was aware that it was a one bedroom apartment and that Defendant had lived alone. During

1    that probation search, police found the controlled substances which led to the arrest warrant.

2         After confirming that Defendant still lived at the apartment located at 301 Sixth Street,

3    Apartment C, Calexico, Detective Longoria and Detective J. Diaz set up surveillance by

4    parking outside the apartment.  Detective Diaz also had taken part of the May 25, 2005,

5    probation search of Defendant's apartment.  Approximately one hour after setting up

6    surveillance, the officers saw Defendant walk out of his apartment and over to the main

7    residence at 301 Sixth Street, where Defendant's mother lived.  The area consisted of the main

8    residence, where Defendant's mother lived, and three apartments behind the main residence,

9    one of which Defendant lived in.  Detective Diaz was able to confirm Defendant's identity

10   from prior law enforcement contacts.  After a few minutes, Defendant left the main residence

11   and walked back to his apartment carrying a manila folder.  Defendant did not appear to notice

12   the officers.  The officers requested two more units for back up.  Detective Longoria testified

13   that he called for backup because he was aware of Defendant's history of violent crimes, and

14   backup was necessary to apprehend Defendant with sufficient force and prevent the situation

15   from escalating.

16        The officers drove up to the apartment, exited their vehicles, and approached Defendant

17   as he was walking towards his apartment.  At this point, Defendant was inside a chain link

18   fence and the officers were just outside of the fence, approximately twelve feet away from

19   Defendant.  The officers called to the Defendant, and the Defendant looked back.  The officers

20   ordered the Defendant to come to the front of the gate.  Defendant asked what was going on,

21   and the officers informed him of the arrest warrant.  The officers told the Defendant that he

22   was under arrest and that they were going to take him into custody.  Defendant did not comply

23   with the order to come to the front gate and began backing up toward his apartment.  The

24   officers continued to order Defendant to come to the front gate.  Two backup officers, Sergeant

25   Gonzalo Gerardo and Officer Armand Orozco, arrived at the scene and Defendant asked

26   Sergeant Gerardo what was going on.  Sergeant Gerardo advised the Defendant of the

27   outstanding arrest warrant.  Defendant remained uncooperative and continued to back up all

28   the way to a sliding glass door which he had opened.  Defendant stepped into the apartment

1    breaking the threshold of the sliding glass door.  The officers immediately approached and

2    handcuffed the Defendant without drawing their weapons.

3          Detective Longoria requested that Sergeant Gerardo and Officer Orozco conduct a

4    safety sweep of the apartment in order to confirm no one else would come out of the apartment

5    or back room and attack the officers.  The officers conducting the safety sweep entered the

6    living room, went back through the bedroom and bathroom, and confirmed that no one else

7    was in the apartment.

8          During the safety sweep, Detective Diaz alerted Detective Longoria to the couch located

9    in the living room.  Detective Longoria looked down at the couch while he was approximately

10   three feet away and "noticed the bottom grip portion of a firearm . . . protruding out of the

11   couch." *Transcript*, p. 13.  Detective Longoria testified that he knew Defendant was a

12   convicted felon and that possession of a firearm would be a violation of law.  Detective

13   Longoria lifted the seat cushion to confirm that it was a firearm.  Detective Longoria had two

14   officers secure the residence while he applied for a search warrant.  Upon issuance of the

15   search warrant, the firearm was seized.

16   On November 29, 2007, a federal grand jury returned a one-count indictment charging

17   the Defendant with being a Felon in Possession of a Firearm and Ammunition, in violation of

18   Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).  (Doc. # 1).

**ANALYSIS**

19

20   **I. Entry into Defendant's Residence**

21          Defendant contends that the officers made no showing of "specific and articulable facts"

22   to support a "reasonable suspicion" that there were dangerous individuals within Defendant's

23   residence that posed a risk to the officers' safety. *Mot. to Suppress*, p. 4.  Defendant contends

24   that the outstanding warrant was based on "non-violent drug related offenses," and the officers

25   had not been confronted by other individuals before or during Defendant's arrest. *Id.*  The

26   Government contends the protective sweep pursuant to the arrest was valid because the officers

27   "reasonably believed that someone was inside [Defendant's] residence who could destroy

28   evidence or pose a danger to the arresting officers." *Opp.*, p. 6.

1    A "protective sweep" is a "quick and limited search of premises, incident to an arrest

2  and conducted to protect the safety of police officers and others." *Maryland v. Buie*, 494 U.S.

3  325, 327 (1990). In order to admit evidence obtained from the protective sweep, the detectives

4  must have had a reasonable suspicion of danger based on "articulable facts which, taken

5  together with the rational inferences from those facts, would warrant a reasonably prudent

6  officer in believing that the area to be swept harbors an individual posing a danger to those on

7  the arrest scene." *Id.*

8    In *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1299 (9th Cir. 1988), the

9  Court of Appeals found that officers conducted an invalid sweep of an apartment after arresting

10  three men outside of the apartment. Although the officers had formed a suspicion that a drug

11  transaction was occurring, they had no independent knowledge that drugs were still in the

12  house or that any drugs were in danger of destruction. *Id.* The court concluded that the agents

13  had no reason to suspect anyone else remained in the apartment because they saw three men

14  go in the apartment and arrested all three of them. *Id.* The court found that the officer must

15  possess more than a subjective belief that danger existed and that there was no particularized

16  evidence supporting the officer's belief that other persons were inside the apartment or

17  observing the arrest. *Delgadillo*, 856 F.2d at 1298.

18    In *United States v. Paopao*, 469 F.3d 760, 766 (9th Cir. 2006), the Court of Appeals

19  found that officers conducted a valid sweep of a gambling room after receiving a credible tip

20  that two perpetrators of gambling room robberies were in the room. After the officers arrested

21  one of the individuals outside of the room, the Court found that the officers had a reasonable

22  suspicion of danger from inside the room because the other individual was still missing. *Id.*

23  Even though the officers made the arrest outside of the room, the court found that the

24  protective sweep inside the room was justified because "an individual within a house can still

25  pose a threat to arresting officers outside of it . . . . The location of arrest, inside or outside the

26  premises, should only bear on the question of whether the officers had a justifiable concern for

27  their safety." *Id.*

28    Detective Longoria testified that prior to the arrest, he was aware that the Defendant had

a history of violent crimes, including a conviction for being an accessory to a drive-by shooting.  Detective Longoria testified that he was aware that Defendant's cousins had also been involved in violent crimes, and lived in the same area as Defendant.  Detective Longoria testified that he took these facts into account in his decision to call for back up.  Detective Longoria testified that the Defendant was uncooperative in complying with the officers' demands to come to the front gate, and that Defendant took approximately ten steps towards the sliding glass door, and that the Defendant was attempting to enter the apartment contrary to the instructions of the officers.  The Court finds Detective Longoria's testimony to be credible.  The Court finds that the Defendant's uncooperative behavior and movements toward the open sliding glass door, taken together with Defendant's history of violent crimes, would warrant a reasonable officer in believing that there may be another individual in the apartment which would pose a danger to the officers.  The Court concludes the protective sweep was valid.

**II. Scope of the Search and Plain View Doctrine**

Defendant contends that the firearm was discovered in a search which went beyond the scope of a valid protective sweep. *Mot. to Suppress*, p. 5.  Defendant contends that protective sweeps are limited only to areas where dangerous individuals may be hiding, and Detective Longoria "had no legitimate reason to search under the couch cushions." *Id.* at 5.  The Government contends that the firearm was found in "plain view" once the officers were lawfully inside the house conducting the protective sweep. *Opp.,* p. 6.  The Government contends that once the officers saw evidence of a firearm in plain view, the officers had authority to seize the weapon. *Id.*

The scope of a protective sweep is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie,* 494 U.S. at 327.  Under certain circumstances, police may seize evidence in "plain view" without a warrant. *Arizona v. Hicks*, 480 U.S. 321, 324-325 (1987) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)).  Items found in plain view during a protective sweep may be seized. *Buie*, 494 U.S. at 330.  In order for the plain view doctrine to apply, (1) the detectives must have been lawfully

1    searching the area where the evidence was found, and (2) the incriminatory nature of the

2    evidence must have been immediately apparent. *Horton v. California*, 496 U.S. 128, 130

3    (1990); *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005). Before seizing the

4    evidence in plain view, the searching officer must have probable cause to support the suspicion

5    of the incriminatory nature of the evidence. *Hicks*, 480 U.S. at 324-325. If seizure of the

6    evidence is justified, then officers are permitted to move the evidence for closer examination.

7    *Id.* at 326.

8         Detective Longoria testified that Detective Diaz entered the living room and alerted

9    Detective Longoria to the couch cushion. Detective Longoria testified that he was standing

10   approximately three feet away from the couch when he "noticed the bottom grip portion of a

11   firearm . . . protruding out of the couch." *Transcript*, p. 13. Detective Longoria testified that

12   he knew Defendant was a convicted felon who was not permitted to possess a firearm.

13   Detective Longoria then lifted the seat cushion to confirm it was a firearm. Once he made that

14   confirmation, Detective Longoria secured Defendant's apartment and applied for a search

15   warrant.

16        The Court finds that Detective Longoria was lawfully inside Defendant's living room,

17   saw the butt of the firearm in plain view, and immediately knew the incriminating nature of

18   the gun. Although Detective Longoria could have seized the firearm once he saw it in plain

19   view, he lifted the couch cushions to confirm it was a firearm, and applied for a search warrant.

20   The Court concludes that Detective Longoria's lifting the couch cushion did not exceed the

21   scope of the protective sweep.

22                                 **CONCLUSION**

23        IT IS HEREBY ORDERED that the Motion to suppress evidence (Doc. # 17) filed by

24   Defendant is DENIED.

25

26   DATED: April 18, 2008

27                                 **WILLIAM Q. HAYES**
                                   United States District Judge

28