```
 1  KAREN P. HEWITT
    United States Attorney
 2  RANDY K. JONES
    Assistant United States Attorney
 3  California State Bar No. 141711
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: (619) 557-5684
    randy.jones2@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3238-WQH |
|---|---|---|
| Plaintiff, | ) | DATE: June 2, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| JUAN HERNAN LEMUS, | ) | **GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT'S MOTIONS IN LIMINE** |
| Defendant. | ) | |

COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and files the attached motions in limine relating to this case.

## I

## STATEMENT OF THE CASE

On November 29, 2007, a federal grand jury returned a one-count indictment charging Defendant Juan Hernan Lemus ("LEMUS") with being a Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

On January 10, 2008, the Defendant was arraigned on the Indictment and entered a plea of not guilty.

## II

## **STATEMENT OF FACTS**

A.   Arrest of Lemus

On August 24, 2006, at approximately 6:00 a.m., Calexico Police Department (CPD) Detectives Longoria and Diaz were advised that there was an outstanding arrest warrant for Lemus on possession of controlled substance for sale charges. Based on prior law enforcement contacts with Lemus, the detectives knew Lemus was a convicted felon and knew that he lived at 301 Sixth Street, Apartment C, Calexico. To confirm that Lemus still lived at that residence, the detectives went to the apartment and conducted surveillance outside of the residence. Shortly thereafter, the detectives saw Lemus walking from his mother's residence (301 Sixth Street) to his apartment (301 Sixth Street, Apartment C) carrying a beige file folder. Lemus' apartment was in the rear of his mother's yard. For officer safety, the detectives requested back-up. CPD Sgt. Gerardo and Officer Orozco responded.

At approximately 9:49 a.m., the officers approached Lemus' apartment. Just as they approached, Lemus was exiting the apartment through a sliding glass door. The detectives announced themselves as police officers and told Lemus to walk toward them. Lemus refused to do so and demanded to know why he was being asked to come toward the detectives. The detectives told Lemus they had a warrant for his arrest. Lemus continued to ignore the officers' commands and backed up toward the sliding glass door. Lemus was immediately apprehended without further incident.

B.   Protective Sweep of Lemus' Apartment

The sliding glass door was still open, at which point the officers cleared the apartment for officer safety reasons. As they exited the apartment, CPD Detective Diaz saw the beige file folder Lemus had earlier been seen carrying located in between the sofa cushions. Detective Diaz also saw the butt and grip portion of a handgun protruding from underneath the sofa cushion. Detective Diaz told Detective Longoria what he had seen. Based on Lemus' status as a convicted felon, Detective Longoria knew that Lemus would be in violation of the felon in possession of a firearm statute. Detective Longoria lifted the sofa cushion and noticed a black and silver Ruger semi-automatic handgun.

### C.    State Search Warrant Secured and Executed

Detective Longoria secured the premises and later obtained a state search warrant signed by San Diego County Superior Court Judge Jeffrey Jones. (See Attachment A - Copy of State Search Warrant). At approximately 3:30 p.m., local police officers, along with ATF Special Agent Hernandez, executed the search warrant at 301 Sixth Street, Apartment C. The firearm was removed from under the sofa cushion and collected as evidence. The firearm, a black and silver Ruger P-95 DC 9 mm semi-automatic handgun, was loaded with nine 9mm rounds in the magazine. In addition, dominion and control documents in Lemus' name was found and recovered, along with a photo album containing several photographs of Lemus with several documented gang members.

### D.    Firearm Trace

A subsequent ATF firearm trace of the handgun shows that the firearm was purchased from Arizona Sportsman, Inc., Mesa, Arizona, by a Robin Smith, Chandler, Arizona on October 26, 1998. The firearm has not been reported stolen.

### E.    Fingerprint Evidence

On December 11, 2006, a latent fingerprint recovered from the firearm magazine was compared with the left thumb print of Lemus taken the date of his arrest. The fingerprints matched.

### F.    Interstate Nexus

A subsequent interstate nexus check revealed that the firearm was manufactured by Sturm, Ruger & Co., in Prescott, Arizona.

### G.    Lemus' Prior Criminal Record

Certified court documents show that Lemus was convicted on September 11, 2002 in the Superior Court of California, Imperial County, of accessory after the fact in a drive by shooting into an inhabited dwelling. He received 180 days in county jail and 3 years probation.

## III

## POINTS AND AUTHORITIES

### A.     EXPERT TESTIMONY SHOULD BE ADMITTED

It is within the sound discretion of the trial judge to determine whether or not expert testimony would assist the trier-of-fact in understanding the facts at issue. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F. 3d 814, 821 (9th Cir. 1994). Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge.

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. See, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) ("[W]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.") (internal quotations omitted). See also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member).

An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

The United States moves for a firearms expert to testify regarding the interstate nexus of the weapon seized in this case. Whether the gun was manufactured outside of the state of California is an essential element of the offenses charged. Accordingly, the Court should allow such evidence to enable the United States to prove essential elements of the charged offense.

//

//

**B.     GOVERNMENT REQUESTED ATTORNEY VOIR DIRE**

The Government respectfully requests a reasonable amount of time for attorney conducted voir dire.

**C.     404(B) OR 609 EVIDENCE**

Under Rule 404(b), evidence of a defendant's other crimes, wrongs, or acts may not be admitted if it is intended solely to prove that the person's conduct during the charged incident is in conformity with his or her conduct on a different occasion. Fed. R. Evid. 404(a). "Other act" evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. Fed. R. Evid. 404(b).

Under a four-part test used to determine whether "other act" evidence may be admitted under Rule 404(b), a district court must determine the following: (1) if sufficient evidence exists for the jury to find that the defendant committed the other act; (2) if the other act tends to prove a material issue in the case; (3) if the other act is not too remote in time; and (4) if admitted to prove intent, the other act is similar to the offense charged. United States v. Murillo, 255 F.3d 1169, 1175 (9th Cir. 2001), cert. denied, 535 U.S. 948 (2002). If this test is satisfied, the court should admit the evidence unless its prejudicial impact substantially outweighs its probative value. Fed. R. Evid. 403. A reviewing court must give "considerable deference" to the trial court's application of Rule 403. Murillo, 255 F.3d at 1176.

In the instant case, the United States will seek to offer evidence of Lemus' September 11, 2002 accessory after the fact incident. The evidence passes all four prongs of the Rule 404(b) test, and that its prejudicial impact would not substantially outweigh its probative value.

                1)     There Is Sufficient Proof of the
                      Accessory After the Fact Charge

Sufficient evidence must be adduced for a jury to "reasonably conclude that the [other] act occurred and that the defendant was the actor." United States v. Hinton, 31 F.3d 817, 823 (9th Cir. 1994). This requirement is met by a preponderance of evidence. United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997). The proof threshold under Rule 404(b) "is not a high one, and the testimony of a single witness can be sufficient." Johnson, 132 F.3d at 1283. Here, the requisite proof will be supplied by the testimony of the arresting agent in that case, along with a copy of the certified

Judgement and Commitment. Moreover, there is a "low threshold" for this prong of the test. <u>United States v. Hinton</u>, 31 F.3d 817, 823 (9th Cir. 1994). The above evidence is sufficient to establish proof of the prior felony conviction.

### 2) The Prior Accessory Afte The Fact Incident Will Prove Material Points in the Instant Case

The Government will offer the 404(b) evidence to show Islas' motive, intent, absence of mistake, modus operandi, and knowledge of the crimes alleged in the Indictment. Each of these facts (particularly knowledge and intent, which were elements of the crimes charged) has previously been deemed material for purposes of Rule 404(b). <u>See</u> <u>United States v. Castillo</u>, 181 F.3d 1129, 1134 (9th Cir. 1999), <u>cert. denied</u>, 532 U.S. 965 (2001); <u>United States v. Arambula-Ruiz</u>, 987 F.2d 599, 603 (9th Cir. 1993). This Court should, in turn, admit the evidence on these bases.

### 3) The Prior Act is Not Remote in Time

The prior act occurred less than six years ago. There should be no dispute that this prong has been fulfilled. <u>See</u> <u>United States v. Houser</u>, 929 F.2d 1369, 1373 (9th Cir. 1991) (four years not too remote); <u>United States v. Rubio-Villareal</u>, 927 F.2d 1495, 1502-03 (9th Cir. 1991) (same); <u>United Sates v. Ono</u> 918 F.2d 1462, 1465 n.2 (9th Cir. 1990) (seven-year old conviction admissible); <u>United States v. Ross</u>, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen-year-old conviction admissible); <u>United States v. Spillone</u>, 879 F.2d 514, 518 (9th Cir. 1989), <u>cert. denied</u>, 498 U.S. 878 (1990) (seventeen years not too remote).

### 4) The Prior Act is Similar to the Charged Offense

Lemus is charged with the same type of offense, i.e. a firearm offense. These are clearly similar acts.

### 5) Rule 403 Should Not Bar Admission of the Evidence

Unfair prejudice results when evidence "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." <u>United States v. Johnson</u>, 820 F.2d 1065, 1069 (9th Cir. 1987). Evidence is not unfairly prejudicial simply because it tends to convince the jury of the defendant's guilt; it is only when the evidence moves the jury on a basis unrelated to the merits of the case that it is prejudicial. Here, evidence of the prior alien smuggling charge does not pose any such

risk of causing an improper emotional response.  In addition, the Court may use a limiting instruction to ameliorate any possible prejudice.  See United States v. Smith, 282 F.3d 758, 769 n.4 (9th Cir. 2002) (district court did not abuse its discretion under Rule 403 by admitting other act evidence, where the court instructed the jury that it could consider the prior act "only as it bears on . . . Smith's intent or knowledge . . . , and for no other purpose").

Even if the court does not allow the United States to introduce evidence of Lemus' prior bad act in it's case in chief, it should allow the United States the opportunity to cross-examine Lemus about the September 2002 incident since it concerns his character for untruthfulness.  Rule 608(b) provides: "Specific instances of conduct by a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b).

Clearly, Lemus' prior firearm conviction goes toward his character for untruthfulness.

### D. THE COURT SHOULD PROHIBIT DEFENDANT FROM MAKING ANY REFERENCE DURING THE TRIAL TO FAMILY HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, Defendant's family, health, age, finances, education and potential punishment is inadmissible and improper.

Fed. R. of Evid. 402 provides that evidence "which is not relevant is not admissible." Fed. R. Evid. 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).  Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict.  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Reference to Defendant's family, health, age, finances, education and potential punishment may be relevant at sentencing.  However, in a possession of a firearm trial, such reference is not only irrelevant and unfairly prejudicial but a blatant play for sympathy and jury nullification as well.

**IV**

**CONCLUSION**

For the above stated reasons, the Government respectfully requests that its motions in limine be granted.

DATED: May 21, 2008

                                          Respectfully submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          S/Randy K. Jones
                                          RANDY K. JONES
                                          Assistant United States Attorney